**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DOMONIC MCCARNS,
*Defendant-Appellant.*

Nos. 16-10410
17-10016

D.C. No.
2:08-cr-00116-KJM-5

OPINION

Appeals from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted July 10, 2018
San Francisco, California

Filed August 21, 2018

Before: Susan P. Graber and Richard C. Tallman, Circuit
Judges, and Ivan L.R. Lemelle,[*] Senior District Judge.

Opinion by Judge Lemelle

---

[*] The Honorable Ivan L.R. Lemelle, Senior United States District Judge for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction and sentence for conspiracy to commit mail fraud.

Rejecting the defendant's contention that the district court failed to comply with the Speedy Trial Act, the panel held that the district court's references to Eastern District of California local codes – which correspond to the factors set forth in 18 U.S.C. § 3161(h)(7)(B) – sufficiently explain the district court's reasons for its findings that the "ends of justice" were served by granting continuances.

Because any error was harmless, the panel did not reach the question of whether the district court erred when it increased the defendant's Sentencing Guidelines offense level for being a manager or supervisor pursuant to U.S.S.G. § 3B1.1(b). The panel held that the defendant's Guidelines sentence is necessarily 240 months because the 240-month statutory maximum for the defendant's offense is less than the minimum of the applicable Guidelines range, regardless of whether the § 3B1.1(b) enhancement applies.

The panel addressed other issues in a memorandum disposition.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Amitai Schwartz (argued), Law Offices of Amitai Schwartz, Emeryville, California, for Defendant-Appellant.

Matthew G. Morris (argued) and Michael D. Anderson, Assistant United States Attorneys; Camil A. Skipper, Appellate Chief; McGregor W. Scott, United States Attorney; United States Attorney's Office, Sacramento, California; for Plaintiff-Appellee.

**OPINION**

LEMELLE, Senior District Judge:

Domonic McCarns appeals his conviction and sentence for conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. McCarns raises eight issues on appeal, including that the district court failed to comply with the Speedy Trial Act and that the district court erred at sentencing by increasing McCarns' offense level for being a manager or supervisor. We address these two issues in this published opinion and all other issues in an unpublished memorandum disposition filed concurrently with this opinion. We affirm McCarns' conviction and sentence.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The scheme at the center of this case is as follows. Co-defendant Charles Head established a trio of entities—one that solicited distressed homeowners, one that recruited straw buyers, and a third that obtained mortgages from lenders. McCarns worked with the first entity as a

salesperson; his job was to convince homeowners to participate in the scheme.

The scheme would identify distressed homeowners who had equity in their homes. Salespeople, including McCarns, would approach these homeowners with a proposal—sell your home to an "investor" for one year, repair your credit during that year by making monthly "rent" payments while staying in your home, then repurchase your home at the end of the year. The scheme was pitched as a way for distressed homeowners to stay in their homes while regaining their financial footing, but actually involved a series of fraudulent transactions and regularly resulted in the victims losing their homes.

The scheme accomplished its hidden agenda by identifying "investors"—who were really straw buyers for the defendants—to purchase the homes. The defendants would create fraudulent loan applications for the straw buyers, allowing them to secure mortgages for up to 100% of the value of the victims' homes. When a lender issued a mortgage, the defendants would pay off the victim's original mortgage, make a small upfront payment to the victim, pay a fee to the straw buyer, and keep the remainder of the proceeds. This series of transactions allowed the defendants to extract the equity that had accumulated in the victims' homes and essentially left the victims as renters. If the victims missed "rent" payments, the defendants would evict them and sell the property.

In February 2010, the Government filed a superseding indictment charging McCarns with one count of conspiracy

to commit mail fraud.[1] One of McCarns' co-defendants was Charles Head, the leader of the scheme. Head was charged with conspiracy to commit mail fraud and mail fraud.[2] Prior to trial, McCarns filed a motion to dismiss the charges against him for violation of the Speedy Trial Act. The motion was denied. McCarns and Head proceeded to a jury trial and were convicted on all counts in December 2013. On September 21, 2016, McCarns was sentenced to 168 months of imprisonment, followed by 36 months of supervised release. McCarns was later ordered to pay $4.9 million in restitution, pursuant to a stipulation agreed to by McCarns and the Government. McCarns timely filed two notices of appeal, one after sentencing and the other after the order of restitution.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

"We review the district court's interpretation and application of the Speedy Trial Act de novo . . . ." *United States v. Medina*, 524 F.3d 974, 982 (9th Cir. 2008). We review a district court's interpretation of the Sentencing Guidelines de novo, its factual findings for clear error, and

---

[1] McCarns was initially indicted in March 2008.

[2] The Government had previously indicted Head and McCarns, along with other co-defendants, in February 2008 on separate charges of conspiracy to commit mail fraud, mail fraud, and conspiracy to commit money laundering. Those charges related to a similar scheme, also orchestrated by Head, that was executed immediately before the scheme presently at issue. The charges against McCarns in the earlier case were dismissed after McCarns was sentenced in this case.

its application of the Guidelines to the facts of the case for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir.) (en banc), *cert. denied*, 138 S. Ct. 229 (2017).

## I. SPEEDY TRIAL ACT

The Speedy Trial Act requires that a defendant's criminal trial begin within seventy days of the defendant being charged. 18 U.S.C. § 3161(c)(1). But the Act also allows for continuances under various circumstances, including when the district court "find[s] that the ends of justice served by [granting a continuance] . . . outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). The Act provides four factors for the district court to consider when making the "ends of justice" finding. *Id.* § 3161(h)(7)(B). The district court's "reasons for" its "ends of justice" finding must be "set[] forth, in the record of the case, either orally or in writing," for the continuance to be excluded from the Act's seventy-day limit. *Id.* § 3161(h)(7)(A).

On three occasions before McCarns' trial began, the district court continued the trial by referring to local codes—T2 and T4—which are defined in the Eastern District of California's General Order No. 479.[3] General Order No. 479 was issued "to facilitate the recording of excludable time on the record" and defines local codes to correspond to various provisions of the Speedy Trial Act. General Order No. 479 (E.D. Cal. Oct. 15, 2009). T2 corresponds to

---

[3] McCarns' trial was continued more than three times, but McCarns challenges only three continuances on appeal. Cumulatively, these three continuances lasted longer than seventy days.

§ 3161(h)(7)(B)(ii), *see id.* at 3, which is relevant when a case is notably "unusual or complex."**[4]** T4 corresponds to § 3161(h)(7)(B)(iv), *see* General Order No. 479 at 3, which is relevant when the parties need more time to retain counsel or effectively prepare for trial.**[5]** Prior to trial, McCarns moved to dismiss the indictment for violations of the Speedy Trial Act. The district court denied McCarns' motion to dismiss, concluding that its explanations for the various trial continuances satisfied the requirement in § 3161(h)(7)(A) that the district court explain the reasons for its "ends of justice" findings.

McCarns does not dispute that the three challenged continuances were factually supported by the complexity of the case and counsel's need for more time to adequately prepare. Instead, McCarns argues that the district court failed to make the requisite "ends of justice" findings on the record when it referred to local codes T2 and T4. McCarns maintains that the district court's references to the local

---

**[4]** Section 3161(h)(7)(B)(ii) instructs a district court to consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

**[5]** Section 3161(h)(7)(B)(iv) instructs a district court to consider "[w]hether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within [§ 3161(h)(7)(B)(ii)], would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

codes in General Order 479 were only "reasons that could support" the "ends of justice" findings.

McCarns' argument fails because the Speedy Trial Act only requires a district court to state "its *reasons* for finding that the ends of justice served by granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added). A district court does not need to recite specific statutory language to satisfy § 3161(h)(7)(A) as long as its reasoning is sufficient to justify excluding the continuance from the Act's seventy-day limit. *See Medina*, 524 F.3d at 985–86; *United States v. Brickey*, 289 F.3d 1144, 1150–51 (9th Cir. 2002), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010) (en banc); *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1157 n.9 (9th Cir. 2000). A district court's "discussion of the statutory factors is adequate to support a continuance that serves the ends of justice" when it is clear that the district court "considered the factors in § 3161(h)([7])(B) and determined that the continuance was merited based on" the applicable factor or factors. *Medina*, 524 F.3d at 986. In fact, because the Speedy Trial Act only requires a record of the reasons for a continuance, "[d]istrict courts may fulfill their Speedy Trial Act responsibilities by adopting stipulated factual findings which establish valid bases for Speedy Trial Act continuances."[6] *Ramirez-Cortez*, 213 F.3d at 1157 n.9.

---

[6] Nor must a district court put the requisite findings on the record when it grants the continuance, it can do so later if and when a defendant moves to dismiss the indictment for failure to comply with the Speedy Trial Act. *See Medina*, 524 F.3d at 986. That being said, "the reasons [later] stated must be the actual reasons that motivated the court at the time the continuance was granted." *United States v. Engstrom*, 7 F.3d

The district court's references to the local codes, which correspond to the § 3161(h)(7)(B) factors, sufficiently explain the district court's reasons for its "ends of justice" findings. *See Medina*, 524 F.3d at 985–86. Each of the three challenged continuances occurred at the end of a status conference during which counsel for the parties described the need to review voluminous discovery and then engage in motions practice prior to trial. During the status conferences, the court discussed the complexity of the case and the parties' need for more time for adequate preparation. At the end of each conference, the district judge continued the trial to a certain date and stated the local codes that justified each continuance. The district court's use of the local codes creates an adequate record of the reasons for its "ends of justice" findings because the local codes clearly identify the statutory factors that the district court considered when granting the continuances. *See id.*

## II. MANAGER OR SUPERVISOR ADJUSTMENT

"All sentencing proceedings are to begin by determining the applicable Guidelines range." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). "The range must be calculated correctly" because "the Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process." *Id.* (internal citations and quotation marks omitted). McCarns argues that the district court erred when it increased his offense level by three levels for being a manager or supervisor pursuant to

1423, 1426 (9th Cir. 1993) (internal quotation marks and citation omitted).

U.S.S.G. § 3B1.1(b).[7]  Normally, "[a] mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (per curiam).  "However, if there is a mistake made in the Guidelines calculation, harmless error review does apply." *United States v. Leal-Vega*, 680 F.3d 1160, 1170 (9th Cir. 2012); *see also Munoz-Camarena*, 631 F.3d at 1030 & n.5.

We do not reach the question of whether the district court erred when it increased McCarns' offense level for being a manager or supervisor because any error was harmless; the district court correctly calculated the Guidelines sentencing range.  McCarns does not dispute that his criminal history category was V.  *See* McCarns' offense level would have been 35 without the 3-level adjustment for being a manager or supervisor.[8]  The Guidelines sentencing range for a defendant with a criminal history category of V and an offense level of 35 is 262 to 327 months of imprisonment. *See* U.S.S.G. § 5A.  With the 3-level adjustment, McCarns' offense level was 38.  The Guidelines sentencing range for a defendant with a criminal history category of V and an offense level of 38 is imprisonment for 360 months to life. *See id.*

---

[7] All citations are to the 2015 edition of the Guidelines, which was used at McCarns' sentencing.

[8] McCarns challenged two other components of the Guidelines calculation—the calculation of loss per U.S.S.G. § 2B1.1 and the upward adjustment for targeting vulnerable victims per U.S.S.G. § 3A1.1(b)(1). We affirmed the district court's loss calculation and upward adjustment for vulnerable victims in the unpublished memorandum disposition issued concurrently with this opinion.

Ultimately, the difference between an offense level of 35 and an offense level of 38 does not affect the Guidelines calculation because the statutory maximum sentence for conspiracy to commit mail fraud is 240 months. *See* 18 U.S.C. §§ 1341, 1349. "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(a). "For example, if the applicable guideline range is 51–63 months and the maximum sentence authorized by statute for the offense of conviction is 48 months, the sentence required by the guidelines under [U.S.S.G § 5G1.1(a)] is 48 months; a sentence of less than 48 months would be a guideline departure." *Id.* cmt. Therefore, McCarns' Guidelines sentence was 240 months regardless of whether the manager or supervisor enhancement was applied. Any error with respect to that enhancement was therefore harmless. *See cf. Munoz-Camarena*, 631 F.3d at 1030 & n.5.

Our conclusion is consistent with that reached by other circuits that have encountered this same issue. *See United States v. Ramos*, 739 F.3d 250, 253–54 (5th Cir. 2014) (holding that sentencing error was harmless because, even if error were corrected, the statutory maximum sentence would remain the Guidelines sentence); *United States v. Stotts*, 113 F.3d 493, 499 (4th Cir. 1997) (same); *United States v. Rice*, 43 F.3d 601, 608 n.12 (11th Cir. 1995) (same); *see also United States v. Kruger*, 839 F.3d 572, 580–81 (7th Cir. 2016) (holding that district court did not plainly err because there is no prejudice when statutory maximum sentence would remain the Guidelines sentence if error were corrected). Moreover, our conclusion is consistent with the Supreme Court's recent discussion in *Koons v. United States*

about the relationship between the Sentencing Guidelines and statutory minimum sentences.  138 S. Ct. 1783 (2018).

In *Koons*, petitioners sought sentence reductions pursuant to 18 U.S.C. § 3582(c)(2) because the United States Sentencing Commission lowered the sentencing ranges that applied to their crimes of conviction.  *Id.* at 1786–88.  But when the petitioners were originally sentenced, "the [district] court discarded the advisory ranges in favor of the mandatory minimum sentences" because "the top end of the Guidelines range fell below the applicable mandatory minimum sentence."  *Id.* at 1787 (referring to U.S.S.G. § 5G1.1(b)).  The Court held that the petitioners were not entitled to sentence reductions because "the [district] court scrapped the ranges in favor of the mandatory minimums, and never considered the ranges again; as the [district] court explained, the ranges dropped out of the case."  *Id.* at 1788.  The Court went on to explain that a key consideration when assessing the role of the Guidelines at sentencing "is the role that the Guidelines range played in the selection of the sentence eventually imposed—not the role that the range played in the initial calculation."  *Id.* at 1789.

The Court's reasoning in *Koons* buttresses our conclusion that any error in applying the manager or supervisor enhancement was harmless because the district court properly based McCarns' sentence on the statutory maximum.  At sentencing, defense counsel argued that "the 20 year[] [statutory maximum] [wa]s where the court need[ed] to start, not 360 to life."  The district court agreed, explaining that it "do[es]n't think about that guideline range when there is a statutory maximum."  The district court further disclaimed that the Guidelines range "d[id] not inform [its] thinking in any way whatsoever."  As explained in *Koons*, McCarns' sentence was therefore based on the

statutory maximum, not the calculated Guidelines range. *See* 138 S. Ct. at 1787–89.

**AFFIRMED.**