**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James DAYCHILD, Defendant–Appellant.**

United States of America,
Plaintiff–Appellee,

v.

Patrick O. Neiss, Defendant–Appellant.

Nos. 02–30184, 02–30435.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 2003.

Submission Withdrawn Aug. 8, 2003.

Re–Submitted Oct. 31, 2003.

Filed Feb. 17, 2004.

Robert L. Kelleher Jr., Billings, MT, for defendant-appellant Daychild.

Richard J. Carstensen, Billings, MT, for defendant-appellant Neiss.

Josh Van de Wetering, Assistant U.S. Attorney (argued), Missoula, MT, and James E. Seykora, Assistant U.S. Attorney, Billings, MT, for the plaintiff-appellee.

Before ALARCÓN, GOULD, and CLIFTON, Circuit Judges.

GOULD, Circuit Judge:

Co-defendants James Daychild and Patrick Neiss had the bad judgment not only to plan a venture of unlawful drug distribution, but also to sell five pounds of illegal drugs to a government informant. The marijuana-for-money exchange resulted in a search of Neiss's home, where Daychild also had resided for a week or two. There, law enforcement agents found what they sought and perhaps more: firearms, including an unregistered machine gun, and an additional seven to eight pounds of marijuana. After a jury trial, Daychild and Neiss were both convicted in the United States District Court for the District of Montana of conspiracy to possess and/or distribute marijuana, and of unlawful distribution of marijuana. Neiss was also found guilty of unlawfully possessing with intent to distribute an additional stash of marijuana, and of unlawfully possessing a machine gun in violation of 18 U.S.C. § 922(o). Daychild was sentenced to thirty-three months' imprisonment and Neiss to forty-four months' imprisonment. On appeal, Daychild and Neiss both seek dismissal of their indictments on speedy trial grounds, and contend that the government used insufficient evidence to link them to a conspiracy. Neiss separately challenges the district court's decision to take judicial notice of the return of his indictment, alleges that the government engaged in prosecutorial misconduct, and argues that the district court improperly declined to reduce his sentence even though he accepted responsibility for one of the charges. Daychild separately appeals the district court's decision not to grant him a downward adjustment for being a "minor participant" in the conspiracy, challenges the district court's consideration as "relevant conduct" charges of which the jury had acquitted him, and claims that the district court erred substantively and procedurally in departing horizontally by one criminal history category. We have jurisdiction under 28 U.S.C. § 1291, and we affirm both defendants' convictions and sentences.

## I

### Facts

Early in 2000, law enforcement in Billings, Montana developed a confidential informant, Randy Dangerfield, to conduct controlled buys of marijuana from Patrick Neiss. Dangerfield, who had done illicit business with Neiss in the past, scheduled a meeting with Neiss on the pretense that Dangerfield would buy marijuana on January 13, 2000, at a parking lot near a casino. Neiss told Dangerfield that another person might make the marijuana drop instead of Neiss. On the agreed day, officers conducting surveillance at the casino, next to the marijuana drop site at a nearby parking lot, noticed James Daychild and Patrick Neiss "looking out the [casino] door like they were expecting somebody outside to come in." The officers saw them leave the casino, and learned that both had gone to Neiss's home. Then, Dangerfield arrived at the parking lot drop site. Daychild and Neiss returned to the casino area by car. Neiss drove and Daychild sat in the passenger seat. They parked next to Dangerfield's car. Daychild got out of the car and placed a backpack on the ground between the two cars. Dangerfield picked up the backpack, pulled it into his car, opened it, removed the five pounds of marijuana from the backpack, and gave the backpack back to Daychild with an envel-

ope containing $2000 cash, a down payment on $5000 to be paid for the marijuana. Daychild took the money and said: "Thanks for the contribution to the American Indian Movement." Daychild and Neiss drove away.

On January 16, three days after the controlled buy, state and federal law enforcement agents searched Neiss's house in Billings pursuant to a valid warrant. Officers found Daychild alone in the house. Daychild told them there was marijuana downstairs and that he did not know who owned the house. In the basement where Daychild was staying, the officers seized the empty backpack that had contained the five pounds of marijuana given to the informant three days earlier. They also there found marijuana in a pipe and a small amount weighing 1.6 grams on a nightstand. Upstairs, officers struck a rich vein of contraband: eight prepackaged bags of close to one-pound of marijuana each, materials for growing marijuana, $4150 in cash in a locked safe, loose low-grade marijuana ("marijuana shake") laying on the top of the shelf inside the safe, a .44 magnum revolver, a 9mm semiautomatic pistol, a .45 caliber semiautomatic rifle (M–11) converted into a machine gun by federal definition, and a drill press and machine metal rods that could be used for machine gun conversions.[1]

## II

### *Procedural History*

Neiss and Daychild were each charged with (1) conspiracy to possess and/or distribute marijuana; (2) distribution of marijuana; (3) possession of over 3000 grams of marijuana with intent to distribute; (4) possession of firearms in furtherance of a drug trafficking crime; and (5) possession of an unregistered machine gun in furtherance of a drug trafficking crime. Daychild was arraigned and entered a plea of not guilty on December 29, 2000. Neiss appeared and entered a plea of not guilty on January 18, 2001. He moved for a detention hearing which was held January 22, 2001. Trial was set for both defendants for March 19, 2001.[2] Neiss filed motions to continue, which were granted. On March 22, 2001, Daychild and Neiss were charged in a superseding indictment that included the same five counts as the original indictment.

Neiss was arraigned on the superseding indictment on March 23, 2001. Daychild was arraigned on April 12, 2001. Neiss filed a suppression motion on April 18, 2001, which Daychild joined on April 26. After a hearing on July 16, 2001,[3] the district court denied the suppression motion from the bench. On July 24, 2001, the district court *sua sponte* continued the trial of Daychild and Neiss to August 27,

---

1. Laboratory tests later revealed that the fingerprints of Neiss and Daychild were on the .44 magnum revolver.

2. Neiss filed several additional motions in early 2001, all granted, that were unrelated to his motions for continuance of the jury trial: (1) on January 31, he filed a motion for discovery; (2) on February 13, he filed a motion to withdraw counsel; (3) on February 23, he filed a motion to extend the deadline for filing motions; and (4) on March 16, he filed a motion to extend the motions deadline. The granting of these motions at Neiss's request delayed the trial correspondingly.

3. The district court set a hearing on the motion to suppress for May 14, 2001. On May 10, the court reset the hearing for May 25. The hearing was further delayed by a series of motions for continuances that the court granted: (1) on May 21, the government moved to continue the suppression hearing until June 1; (2) on May 30, Neiss moved to continue the suppression hearing; and (3) on June 20, Daychild moved to continue the suppression hearing. On June 29, the district court issued an order continuing the hearing to July 3, and on July 3, the court again continued the hearing to July 16.

2001. On August 1, 2001, counsel for Neiss again filed a motion to continue the trial on the grounds of unavailability.[4] The district court denied that motion on August 9, 2001. On August 13, 2001, Neiss retained new counsel who moved to continue the trial from August 27, 2001. The district court granted on August 16 Neiss's request to continue the trial to October 15, 2001; the district court stated that the forty-nine days between August 27, 2001, and October 15, 2001, were excludable for speedy trial purposes. On October 10, 2001, Neiss pro se filed still another motion for continuance of the trial to December 10, 2001, which the district court granted.

On October 16, 2001, Daychild filed a motion for a psychiatric examination to determine his competence to stand trial. The next day, the district court ordered Daychild committed to a facility, for a time not to exceed forty-five days, to determine Daychild's competence to stand trial. The court's order declared this time excludable under the Speedy Trial Act.

On October 31, 2001, after a hearing on Neiss's representation, the trial was continued yet again to January 7, 2002. On December 10, 2001, Neiss filed a motion to dismiss, alleging a violation of the Speedy Trial Act. The district court on January 9, 2002 denied this motion, detailing the days excludable for purposes of the Speedy Trial Act. On December 20, 2001, Daychild withdrew his request for a psychiatric examination. On December 21, 2001, a second superseding indictment was filed against both defendants, identical to the

first superseding indictment save that the firearms charges against Neiss and Daychild were brought as discrete counts. On January 3, 2002, Neiss's counsel requested an additional continuance of the trial, which the district court granted. Finally, a consolidated jury trial for the co-defendants was held from February 11, 2002 until February 13, 2002.

Both defendants were convicted of conspiracy to possess and/or distribute marijuana and distributing 2145 grams of marijuana. Neiss was also convicted of unlawfully possessing with intent to distribute 3208.3 grams of marijuana, and of unlawfully possessing a machine gun in violation of 18 U.S.C. § 922(*o*). Daychild was sentenced to thirty-three months' imprisonment and Neiss was sentenced to forty-four months' imprisonment.

### III

#### *Speedy Trial*

Daychild and Neiss contend that because more than one year had elapsed between their arraignments (on December 29, 2000 and January 18, 2000, respectively) and their trial (on February 11, 2002), the district court should have granted their motions to dismiss the indictments on speedy trial grounds.[5] To assess this claim, we examine the statutory and decisional rules governing speedy trial analysis, the district court's calculations, and the defendants' specific objections.

---

4. On August 9, 2001, Neiss stated that he did not oppose continuance and that he intended to replace his retained counsel. Daychild and his counsel were present at the August 9 hearing and did not comment on Neiss's motion to continue the trial.

5. We review a district court's application of the Speedy Trial Act de novo. *See United*

States v. Brickey, 289 F.3d 1144, 1150 (9th Cir.2002). We review the district court's factual findings under the Speedy Trial Act for clear error. *Id.* And we review the district court's ruling on a motion to dismiss an indictment de novo. *United States v. Barrera–Moreno,* 951 F.2d 1089, 1091 (9th Cir.1991).

## A

Congress passed the Speedy Trial Act ("the Act"), 18 U.S.C. § 3161, "to facilitate the disposition of criminal proceedings and to minimize delays between arrest and trial." *United States v. Antonio*, 705 F.2d 1483, 1484 (9th Cir.1983). The Act is designed to ensure that justice is not impaired by unnecessary delay between arraignment and trial. A criminal defendant's trial must normally commence within seventy days of the filing of the indictment or the defendant's initial court appearance, whichever is later. 18 U.S.C. § 3161(c)(1).[6]

The Act recognizes, however, that legitimate needs of the government and of a criminal defendant may cause permissible delays. Numerous statutory exclusions, reflecting the need for orderly and fair procedures, call for time to be excluded from the calculation of the seventy-day limit. Exclusions pertinent to this appeal exclude time for delays caused by filing and disposing of motions, time for delays from continuances, and time for delays from proceedings to determine a defendant's competence to stand trial.[7]

If trial does not commence within the seventy-day limit, after setting aside excluded time, the court must dismiss the indictment upon the defendant's motion filed before trial. 18 U.S.C. § 3162(a)(2).[8] Thus, failure to comply with the Act has grave consequences.[9]

■ The speedy trial clock starts running after the indictment or arraignment (whichever comes last) of the last defendant. *See* 18 U.S.C. § 3161(h)(7) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."); *Henderson v. United States*, 476 U.S. 321, 323, n. 2, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the

---

6. The Act states, in relevant part:

 In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

 18 U.S.C. § 3161(c)(1).

7. Specifically, these statutory exclusions require the district court to exclude from speedy trial calculations: (1) any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(F); (2) "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such ac-

tion outweigh the best interest of the public and the defendant in a speedy trial," 18 U.S.C. § 3161(h)(8)(A); and (3) any "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A).

8. Such a dismissal of the indictment may be with or without prejudice. 18 U.S.C. § 3162(a)(2); *see also United States v. Hardeman*, 249 F.3d 826, 828–29 (9th Cir.2000) (per curiam).

9. Apart from the time limit set by federal statute, there is also a Sixth Amendment right precluding excessive pretrial delay after charges have been leveled against a defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (instructing courts to balance (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant.) Neither Daychild nor Neiss contend that their constitutional right to a speedy trial was offended.

latest codefendant.") Daychild was arraigned on December 29, 2000, but the speedy trial clock began to run when Neiss, his co-defendant, was arraigned almost three weeks later, on January 18, 2001.[10]

■ In assessing exclusions, it is important to recognize that any calculation affecting one defendant applies to the other because neither defendant filed a motion for severance. *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir.1993) (holding that a delay from a grant of continuance to one defendant is also excludable time for a codefendant). Both defendants are bound by 18 U.S.C. § 3161(h)(7).[11]

**B**

The district court excluded the following periods from the Speedy Trial Act calculation:

1. *January 18, 2001—January 22, 2001:* The period between Neiss's first appearance and the detention/bond hearing held four days later. 18 U.S.C. § 3161(h)(1)(F).

2. *January 31, 2001—February 8, 2001:* Neiss's motion for discovery. 18 U.S.C. § 3161(h)(1)(F).

3. *February 13, 2001—to February 14, 2001:* Neiss's motion to withdraw as counsel. 18 U.S.C. § 3161(h)(1)(F).

4. *February 23, 2001—February 26, 2001:* Neiss's motion to extend filing deadlines. 18 U.S.C. § 3161(h)(1)(F).

5. *March 16, 2001—May 21, 2001:* Neiss's motion to extend the motions deadline and his motion to continue the trial date of March 19, 2001. 18 U.S.C. §§ 3161(h)(1)(F) and 3161(h)(8).

6. *April 18, 2001—July 16, 2001:* Neiss's motion to suppress, and the attendant delays of the motions hearing on that matter, up to the district court's denial of the suppression motion from the bench. 18 U.S.C. § 3161(h)(1)(F).

7. *August 1, 2001—August 9:* Neiss's motion to continue the jury trial. 18 U.S.C. § 3161(h)(1)(F).

8. *August 13, 2001—August 16, 2001:* Neiss's motion to continue the jury trial. 18 U.S.C. § 3161(h)(1)(F).

9. *August 27, 2001—October 15, 2001:* The continuance granted on Neiss's August 13 motion to continue the August 24, 2001 trial to December 15, 2001. 18 U.S.C. § 3161(h)(8).

10. *October 10, 2001—December 10, 2001:* Neiss's motion to continue. 18 U.S.C. § 3161(h)(1)(F).

11. *October 16, 2001—December 20, 2001:* Daychild's motion for a psychiatric examination to determine competency to stand trial. 18 U.S.C. 3161(h)(1)(A) and (F).

12. *December 10, 2001—January 9, 2002:* Neiss's motions to dismiss on speedy trial grounds, and his motion to suppress evidence relating to guns, ammunition, etc. seized. 18 U.S.C. § 3161(h)(1)(F).

13. *January 7, 2002—February 11, 2002:* The continuance as per Neiss's January 3, 2002 motion. 18 U.S.C. § 3161(h)(8)(A) and (B)(i) and (iv).

The district court determined that the remaining 65 days—in which a motion was neither filed nor pending, and when a period of continuance was neither requested nor in progress—were includable for

---

**10.** The clock's start time in this case is unaffected by the superseding indictments. *United States v. Karsseboom*, 881 F.2d 604, 606 (9th Cir.1989) ("[T]he Speedy Trial Act ... does not require that the 70 day speedy trial period be restarted upon the filing of a superseding indictment when the superseding indictment charges the same offenses as the original indictment.").

**11.** Neiss requested a severance on December 10, 2001, but the district court denied his motion because trial was imminent.

speedy trial purposes. These periods were:

1. *January 23, 2001—January 30, 2001:* Eight (8) days included.

2. *February 9, 2001—February 12, 2001:* Four (4) days included.

3. *February 15, 2001—February 22, 2001:* Eight (8) days included.

4. *February 27, 2001—March 15, 2001:* Seventeen (17) days included.

5. *July 17, 2001—July 31, 2001:* Fifteen (15) days included.

6. *August 10, 2001—August 12, 2001:* Three (3) days included.

7. *August 17, 2001—August 26, 2001:* Ten (10) days included.

### C

Defendants object to the district court's method of calculation on several grounds. Because a delay to one defendant here is a delay to both defendants, we address the objections to the district court's speedy trial calculation by topic.

### 1

 Neiss argues that the district court improperly excluded the day on which various motions were filed. Had the district court excluded only the days after a motion was filed (until its disposition), the days includable for speedy trial purposes would have been seventy-two rather than sixty-five, and the defendants would have been entitled to a dismissal of their indictments. Thus, the issue whether the district court may exclude from the speedy trial calculation the day of a motion's filing is dispositive.

Neiss contends that it was improper to exclude the day on which a motion was filed because to do so would contradict Fed.R.Crim.P. 45(a)(1), which excludes from counting "the day of the act, event, or default that begins the period." [12]

However, Neiss cites the wrong rule. We do not here address an issue of criminal procedure, but rather of statutory interpretation. The controlling rule is set by the plain language of 18 U.S.C. § 3161(h)(1)(F), which directs a district court not to count any "delay resulting from any pretrial motion, *from the filing of the motion* through the conclusion of the hearing on, or other prompt disposition of, such motion." (emphasis added).[13] Al-

---

**12.** Fed.R.Crim.P. 45(a)(1)-(3) provide:
Rule 45. Computing and Extending Time
**(a) Computing Time.** The following rules apply in computing any period of time specified in these rules, any local rule, or any court order:
**(1) Day of the Event Excluded.** Exclude the day of the act, event, or default that begins the period.
**(2) Exclusion from Brief Periods.** Exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days.
**(3) Last Day.** Include the last day of the period unless it is a Saturday, Sunday, legal holiday, or day on which weather or other conditions make the clerk's office inaccessible. When the last day is excluded, the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day when the clerk's office is inaccessible.

**13.** Fed.R.Crim.P. 45 applies to calculating the time periods required by the Federal Rules of Criminal Procedure. The rule applies, for example, to the time required to file a motion or to respond to a court's order. The terms of the Rules Enabling Act, *see* 28 U.S.C. § 2072, however, specify that rules of evidence, or, as here, procedure, "shall not abridge, enlarge or modify any substantive right." If they do, the evidentiary or procedural rules shall have no force or effect. *Id.* By contrast, 18 U.S.C. § 3161(h)(1)(F) states that excludable delay is calculated including the date from motion filing to disposition. Because applying Fed. R.Crim.P. 45 to the speedy trial calculation would alter the substantive meaning that Congress gave to the Speedy Trial Act, Fed. R.Crim.P. 45 cannot properly be interpreted to supersede or contradict the Speedy Trial Act. The language of 18 U.S.C. § 3161(h)(1)(F) makes clear that Congress

though we have not discussed this issue in detail, we have previously said that district courts are to "calculate the 70–day period excluding the day the motion was filed and the day it was heard." *United States v. Aviles,* 170 F.3d 863, 869 (9th Cir.1999), *amended by,* 216 F.3d 881 (9th Cir.2000) (amending disposition to clarify that the day a motion is filed is excluded from the seventy-day speedy trial calculation); *see also United States v. Antoine,* 906 F.2d 1379, 1380 (9th Cir.1990) (applying this method of calculation); *United States v. Wirsing,* 867 F.2d 1227, 1230 n. 6 (9th Cir.1989) ("All periods referenced herein [including periods of exclusion under 18 U.S.C. § 3161(h)(1)(F) ] are inclusive. For example, the period *between* December 1 and December 31 includes both December 1 and December 31."); *United States v. Van Brandy,* 726 F.2d 548, 550 (9th Cir. 1984) (same).

Our sister circuits are in accord. *See United States v. Kington,* 875 F.2d 1091, 1107 (5th Cir.1989) ("When the clock stops for [pending motions], all days between and including the commencement and termination of the proceeding are excluded from the seventy-day count."); *United States v. Jodoin,* 672 F.2d 232, 237 n. 7 (1st Cir.1982) (noting that "the [Speedy Trial]Act states as to excludable days that

both the day the motion is filed and the day it is disposed of shall be counted").[14]

We hold that the day a party files a motion is excludable for speedy trial purposes. This decision accords with the literal language of the Speedy Trial Act, the weight of authority of other circuits' precedent on the same issue, and the guidance of our prior decisions. The district court did not err.

**2**

Both defendants contend that the district court improperly excluded the period between July 16, 2001 and August 27, 2001. This is the period beginning on the day the court disposed of the Neiss's previously filed motion to suppress, and ending on the first day of a court-approved continuance. The district court, however, did not exclude this entire period. The court excluded only a total of thirteen days—nine days for Neiss's August 1, 2001 motion to continue the trial,[15] and four days for his August 13 motion requesting the same.[16] Any challenge to the *excludable* time within the period between mid-July to the end of August, 2001 relates to these two motions to continue that Neiss filed. As we have already explained, 18 U.S.C. § 3161(h)(1)(F) required the district court to exclude the day of the motion's filing, the period in which the motion

meant to count as excludable the day a motion is filed.

**14.** The Sixth Circuit reached a different result in *United States v. Thomas,* 49 F.3d 253, 256 (6th Cir.1995), holding that "[t]his circuit does not include the date a motion was filed in the calculation, unless that date was also the date an order was entered resolving the motion."

**15.** Neiss moved to continue the trial on August 1, 2001, but then amended the motion the next day. The district court resolved the motion on August 9, 2001. Thus, the court properly excluded nine days. The district

court was correct in excluding the day the unamended motion was filed, as 18 U.S.C. § 3161(h)(1)(F) excludes "the filing of the motion," and the amended motion merely continues the request for relief in a different form. Whether viewed as one motion subsequently amended, or as an initial motion withdrawn and a new amended one filed, all the time covered by these motions is excluded.

**16.** For the other motion for continuance, filed on August 13, 2001 and decided August 16, 2001, the district court correctly excluded four days.

was pending, and the day the motion was resolved.

### 3

■ Defendants challenge the district court's calculation of the exclusion period for Daychild's motion to determine competency to stand trial. Neiss contends that the district court was bound not by the Speedy Trial Act's provision excluding delays for medical examinations (18 U.S.C. § 3161(h)(1)(A)), but, instead, by the forty-five day maximum time period prescribed by 18 U.S.C. § 4247(b),[17] which mandates the maximum period a defendant may be held for a psychiatric examination.[18] We agree with the district court that the time period under 18 U.S.C. § 4247 has no bearing on speedy trial calculations. This conclusion is required by *United States v. Miranda*, 986 F.2d 1283 (9th Cir.1993). There, the defendant argued that 18 U.S.C. § 4247(b) limits the excludable time for a competency examination under § 3161(h)(1)(A) of the Speedy Trial Act. We held:

Congress gave no indication that 18 U.S.C. § 4247(b) modifies section 3161(h)(1)(A). Moreover, there is no compelling reason that the two statutes be linked.... Thus, the district court did not violate the Speedy Trial Act by excluding the time consumed during Mi-

randa's competency examination process.[19]

*Id.* at 1285.

Daychild's examination was delayed because he was then in state custody, but his pretrial motion requesting a psychological examination was still pending and was not disposed of until he himself on December 20, 2001 withdrew the motion for a psychiatric exam. The district court properly excluded the time relating to Daychild's motion to determine competency, and the forty-five day limit for examination under 18 U.S.C. § 4241 does not constrain the excludable time for speedy trial purposes.

### 4

■ Neiss contends that it was improper for his former counsel to request motions to continue, without Neiss's knowledge or consent, on March 16, 2001 and August 13, 2001, when Neiss had previously advised the court that he wanted a speedy trial. But delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion is excludable. 18 U.S.C. § 3161(h)(1)(F); *see also United States v. Aviles–Alvarez*, 868 F.2d 1108, 1112 (9th Cir.1989) (noting that a "[p]retrial motion delay under section 3161(h)(1)(F) is automatically excluded. The district court does not have to make findings or consider

---

**17.** The court's order granting Daychild's motion stated, "pursuant to 18 U.S.C. § 4247(b), ... Defendant is committed to the custody of the Attorney General for placement as soon as practicable at a suitable federal facility for a reasonable time, not to exceed forty-five (45) days, for the purpose of a psychiatric or psychological evaluation to determine Defendant's mental competency to stand trial, under 18 U.S.C. § 4241."

**18.** By Neiss's calculation, the district court should have excluded only October 16, 2001—December 1, 2001, representing the

day Daychild filed his motion to determine competency plus the forty-five days it took for the psychiatric examination period to expire under 18 U.S.C. § 4247.

**19.** The Seventh Circuit has expressed the same view: "To put the two statutes together, borrowing the 30 and 45 day limits from the commitment statute for interpolation into the limitless delay provision of the Speedy Trial Act, would be an audacious bit of judicial creativity—and to no purpose that we can see." *United States v. Fuller*, 86 F.3d 105, 106 (7th Cir.1996).

any factors. The delay due to a pretrial motion does not even have to be 'reasonably necessary' to be excluded.") (internal citations omitted). Neiss's counsel's motions therefore tolled the speedy trial clock.

■ To the extent that Neiss and Daychild may be alleging ineffective assistance of counsel, albeit not explicitly, we do not ordinarily consider on direct review claims challenging the efficacy of a criminal defendant's representation. *United States v. Houtchens*, 926 F.2d 824, 828 (9th Cir. 1991) (explaining that "[t]he rationale for this rule is that such a claim cannot be advanced without the development of facts outside the original record") (internal quotation marks omitted). We review ineffective assistance claims on direct appeal only under two extraordinary circumstances, neither of which is presented here: "(1) when the record on appeal is sufficiently developed to permit review and determination of the issue, or (2) when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *United States v. Ross*, 206 F.3d 896, 900 (9th Cir.2000) (internal quotation marks and citations omitted). We decline to assess any claim of ineffective assistance of counsel here, because the claim has not been adequately presented, and it may be asserted in a habeas petition.[20]

### 5

■ Neiss also challenges the district court's five-day exclusion of the period between Neiss's arraignment and the detention/ bond hearing held at his request. The district court's exclusion of

this time was proper. *Wirsing*, 867 F.2d at 1230–31 (holding that motions dealing with detention review are excludable under § 3161(h)(1)(F)).[21]

### 6

■ Neiss objects to the district court's exclusion of the period between December 10, 2001 and January 7, 2002, during which Neiss's motion to dismiss under the Speedy Trial Act was filed, considered, and rejected. This challenge is without merit. The general rule excluding time for motions has no exception for speedy trial motions. Thus, the speedy trial clock was tolled by Neiss's motion to dismiss the case on speedy trial grounds. *Wirsing*, 867 F.2d at 1230 (holding that a ruling on a motion to dismiss an indictment for failure to comply with the Speedy Trial Act is excludable under § 3161(h)(1)(F)).

### 7

■ We reject Neiss's remaining arguments concerning speedy trial. His challenges to excluding time for the motion to withdraw counsel and to excluding time for the motion to extend deadlines for motions are each foreclosed by the language of 18 U.S.C. § 3161(h)(1)(F), which excludes "delay resulting from *any* pretrial motion" (emphasis added). For purposes of calculating time under the Speedy Trial Act, it does not matter what type of pretrial motion is filed to invoke the exclusion of § 3161(h)(1)(F), because the language of the statutory exclusion for delay, from the filing of the motion until its prompt disposition, is unqualified as to the type of motion.

**20.** We express no view on the merits of any such ineffective assistance of counsel claim.

**21.** The defendants correctly note that the district court should not have relied on an unpublished decision in *United States v. Teniji-*

*eth*, 35 F.3d 573 (9th Cir.1994). However, because our *Wirsing* precedent stands for the proposition that pretrial detention review motions are excludable under § 3161(h)(1)(F), the district court did not err in substance.

## D

Because we reject all of defendants' challenges to the district court's speedy trial calculations, we conclude that the seventy-day limit prescribed by the Speedy Trial Act was not offended. The district court properly considered excludable days falling in the time period between Daychild and Neiss's joint indictment on August 18, 2000, and their jury trial commencing February 11, 2002, as these exclusions were compelled by statute, and, notwithstanding total delay from arraignment to trial, defendants had a speedy trial within the meaning of the Speedy Trial Act.

## IV

### *Sufficiency of Evidence for Conspiracy*

Daychild and Neiss each argue that there is insufficient evidence to sustain their convictions for conspiracy to possess with intent to distribute marijuana. The defendants point to Daychild's presentence investigation report, which said in part:

> The defendant and co-defendant can be best characterized as low level dealers who distributed drugs in Billings, Montana.... Because of the relatively large amount of drugs which were being purchased, it was reasonably foreseeable that the defendant and co-defendant

were involved in a conspiracy. After further investigation, it was determined that the defendant and co-defendant were drug dealers who simply knew each other. There is little evidence to suggest that these people obtained drugs from a common source or that they were a collective group combined to further distribute drugs which came from a common source.

However, we review all of the evidence presented at trial, not merely the presentence investigation report, and under the applicable standard of review, after a jury verdict of conviction, we must take the evidence in the light most favorable to the government. *United States v. Yossunthorn*, 167 F.3d 1267, 1270 (9th Cir.1999).[22]

We consider this evidence as it relates to the essence of criminal conspiracy. The Supreme Court has held that the "essence of a conspiracy" is "an agreement to commit an unlawful act." *United States v. Jimenez Recio*, 537 U.S. 270, 274, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003) (internal quotation marks and citation omitted); *see also United States v. Shabani*, 513 U.S. 10, 16, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).[23]

■■■ Turning to the evidence, there was overwhelming proof that both Daychild and Neiss agreed to distribute marijuana.[24] Taking into account our standard

---

**22.** We also determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Yossunthorn*, 167 F.3d at 1270.

**23.** The government also argues that the "connection to the conspiracy, however slight, is sufficient to sustain a conviction," a standard we have repeatedly endorsed. *See, e.g., United States v. Litteral*, 910 F.2d 547, 550 (9th Cir.1990); *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir.1987). However, this minimal standard of proof to sustain a conviction is only triggered "[o]nce a conspiracy exists," *Penagos*, 823 F.2d at 348, not as a means of proving at the threshold that two defendants have conspired to commit unlawful acts. In

this case, as we note in further detail below, overwhelming evidence exists to establish that Neiss and Daychild agreed to distribute illegal drugs, and this agreement, when joined with the overt act of making the exchange of drugs for money, made adequate proof for a conspiracy.

**24.** The conspiracy charges related to the distribution of five pounds of marijuana at the drop site to the government informant. For this reason, and because of the other compelling evidence of Daychild's complicity, we reject Daychild's argument that he is not implicated in the conspiracy simply because he was acquitted of possessing the additional

of review, we determine that a jury could conclude from the evidence that Neiss made the requisite telephone calls to arrange the sale to Dangerfield, the government informant, having in mind that another person might deliver the marijuana; that both defendants scouted the drop site together before they delivered the illicit drugs; that both defendants drove together to meet Dangerfield to exchange drugs for money; that Daychild, while sitting next to Neiss in Neiss's car, handed off the backpack of marijuana to Dangerfield; that Daychild accepted the cash down payment in the envelope that Dangerfield tendered, and gave it to Neiss; and that Neiss later received the balance of funds due, which were largely found, along with the down payment funds, in the home where Neiss and Daychild resided. There also was evidence from which the jury could reasonably conclude that Daychild and Neiss both knew the location of pre-packaged marijuana, weapons, and other tools of the drug trade that were seized in the search of the home; that Neiss was a self-proclaimed drug dealer who had provided drugs to the government informant on prior occasions; that Daychild on accepting the envelope of cash with partial payment had showed recognition that funds were tendered in the envelope by saying, "Thanks for the contribution to the American Indian Movement"; and that officials found both defendants' fingerprints on one of the weapons seized in the search of the home.

 As we held in *United States v. Montgomery*, 150 F.3d 983 (9th Cir.1998), "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction" of conspiracy. *Id.* at 1001 (quoting *United States v. Lennick*, 18 F.3d 814, 820 (9th Cir.1994)) (quotation marks omitted). Viewing the direct and circumstantial evidence in the light most favor-

able to the government, we conclude that a reasonable trier of fact could have found beyond a reasonable doubt that Neiss and Daychild conspired to possess and distribute marijuana.

The defendants argue that the facts of their case are similar to those in *United States v. Umagat*, 998 F.2d 770 (9th Cir. 1993), in which we held that "a jury could not say beyond a reasonable doubt" that enough evidence existed linking two minor defendants to an overall drug conspiracy. *Id.* at 774. The conspiracy in *Umagat* involved drug-trafficking from the Philippines to Guam. The conspirators had smuggled marijuana on three occasions before soliciting the help of two employees of a rental car company. One conspirator told the two car rental employees that a friend of his had "some marijuana" arriving soon and needed an untraceable car. The two employees agreed to furnish a rental car in exchange for a small share of the marijuana. A jury found these two employees guilty of conspiracy. We reversed because:

> [A] defendant cannot be legally bound to a conspiracy unless his understanding with co-conspirators was of sufficient scope to warrant the conclusion that he embraced the common purpose of the conspiracy. Indicative of a defendant's understanding are the degree of his knowledge, actual or constructive, of the scope of the *overall* conspiracy, and the extent to which his own benefits depended on the success of the *entire* venture.

*Id.* at 772–23 (internal quotation marks and citations omitted).

Daychild and Neiss argue that their actions, like those of the rental car employees in *Umagat*, constituted "only a minor role in the single transaction in which they participated," and that "they were not the

---

3208.3 grams of marijuana found in Neiss's upstairs bedroom.

*central* figures in the *overall* smuggling operation." *Id.* at 774. This contention is without merit. Both defendants were directly involved in the intentional exchange of drugs for money, putting their conduct at the core of the prohibition they planned and agreed to offend. A reasonable jury could have concluded that both Daychild and Neiss had an "understanding" that was of "sufficient scope" to show they embraced the "common purpose of the conspiracy." *Id.* at 772–23. Here, the purpose of the conspiracy with which Daychild and Neiss were charged was to possess and distribute marijuana. Both defendants' actions were central to realizing this aim.

■■■ Although the indictment alleged that unnamed Does had participated in the conspiracy, and although fully knowing about a conspiracy's participants would be probative of understanding the conspiracy's purpose, it is not necessary that all persons directly involved in illicit drug dealing have personal knowledge of each and every actor in the conspiracy, and every act taken in furtherance of the conspiracy, to conclude that such persons share a conspiracy's common purpose. *See United States v. Murray,* 492 F.2d 178, 187 (9th Cir.1973) ("[E]ach conspirator is responsible for the acts of his co-conspirators committed pursuant to and in furtherance of the conspiracy. This is true even if one is not aware of the performance of those acts or the existence of the actors.") (internal citations omitted) (*overruled on other grounds by United States v. Cook,* 608 F.2d 1175 (9th Cir.1979) (en banc)). Daychild's direct involvement in the illicit exchange and the other evidence showing his connection to the drug distribution conspiracy was sufficient to show that he adopted its common purpose.

In light of our conclusion that Daychild was culpable in the conspiracy, we also reject Neiss's argument that it takes two to conspire, in which he urges that if Daychild is not liable for conspiracy then Neiss should be acquitted on this conspiracy charge as well. Because we have concluded that Daychild is liable as a conspirator, the premise of Neiss's argument fails, and overwhelming evidence connects Neiss to the conspiracy and to its illicit acts and purposes.[25]

Any additional prison time that each defendant will serve as a result of his conspiracy-related conviction reflects our law's recognition of the menacing threats that conspiracies pose to the public. *United States v. McGuire,* 307 F.3d 1192, 1197 (9th Cir.2002) ("The law has long recognized that conspiracies pose a greater threat to society than individual action toward the same end."). The agreement between Neiss and Daychild to co-venture the possession and distribution of drugs posed dangers to society beyond the mere transaction of a particular sale, and the law properly holds each of them accountable for conspiracy.

## V

### *Taking Judicial Notice*

■■■ Neiss also argues that his indictment should be dismissed because he was not provided with the documents he requested to prove that the indictment was properly returned before an open court. Fed R.Crim. P. 6(f) states: "A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court." On December 20, 2001, the district court

---

**25.** Also, because we determine that Daychild was a co-conspirator, we need not decide whether, even absent Daychild's liability for conspiracy, there was sufficient evidence to conclude that Neiss conspired with unindicted co-conspirators, including, for example, his drug supplier(s).

denied Neiss's motion to obtain a copy of the grand jury minutes to ascertain whether an indictment had been properly returned. Instead, the district court took judicial notice that the indictment was properly returned.[26]

 Federal Rule of Evidence 201(b) permits judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As indicated by the government on the record at the pretrial conference on February 11, 2002, Daychild and Neiss's indictments in the normal course of business were returned in open court before a Magistrate Judge, who was advised that at least twelve grand jurors concurred. Further, the jury in this case was impaneled by the Honorable Richard F. Cebull. Judge Cebull has access to the grand jury records, is aware of the procedures for the return of grand jury indictments, and could properly take judicial notice of the fact that twelve jurors concurred in the grand jury indictment presented in the court. The district court in its order of December 20, 2001, expressly stated that "[t]he Court *has determined* and hereby takes judicial notice that the indictment was properly returned." (emphasis added). This fact is "capable of accurate and ready determination by resort to [a source] whose accuracy cannot reasonable be questioned." Fed.R.Evid. 201(b). The district court did not abuse its discretion. *See also Ritter v. Hughes Aircraft Co.,* 58 F.3d 454, 458–59 (9th Cir. 1995) (holding that it was proper for a court to take judicial notice that layoffs had been made, because "[t]his is a fact which would be generally known in Southern California and which would be capable of sufficiently accurate and ready determination").

## VI

### *Prosecutorial Misconduct*

Neiss contends that the government engaged in prosecutorial misconduct "so grossly shocking and so outrageous as to violate the universal sense of justice," because the government allegedly attempted to pressure Neiss into divulging his criminal activities by adding additional counts and penalties to the second superseding indictment. *U.S. v. Ryan,* 548 F.2d 782, 789 (9th Cir.1976). Neiss also alleges that the government, rebuffed by Neiss's unwillingness to cooperate about drug-related activities, wrongfully sought to have him held without bond pending trial.

 To determine whether prosecutorial misconduct requires reversal, we consider, in the context of the entire trial, whether the challenged conduct appears likely to have affected the jury's ability to judge the evidence fairly. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). The defendant bears the burden of establishing prosecutorial misconduct. *United States v. Aichele,* 941 F.2d 761, 765 (9th Cir.1991). Prosecutorial misconduct invites reversal if it appears more probable than not that the alleged misconduct affected the jury's verdict. *United States v. Simtob,* 901 F.2d 799, 806 (9th Cir.1990); *see also United States v. Mostella,* 802 F.2d 358, 360–61 (9th Cir. 1986) (holding that actual prejudice is necessary for reversal).

 There is no evidence to suggest that the prosecutor's decision to place additional counts in the second superseding indictment affected the jury's ability to

---

**26.** We review the district court's decision to take judicial notice for an abuse of discretion.

*United States v. Chapel,* 41 F.3d 1338, 1342 (9th Cir.1994).

judge the evidence fairly. The only difference between the first indictment and the superseding indictment was the addition of one handgun with no resulting change in penalty. The second superseding indictment included the same firearms charges as the superseding indictment, except the charges were brought as three separate firearms counts instead of one. Neiss had fair notice of the charges against him. We do not see the refining of the counts in the superseding indictments as something that could have unfairly affected the jury's ability to conduct its factfinding role fairly when it determined Neiss's guilt.

 The evidence also does not support Neiss's allegation that he was improperly held without bond throughout his conviction and sentencing. The Magistrate Judge denied bond because he considered Neiss to be a danger to the community. Neiss allegedly possessed a machine gun, the tools necessary to convert additional weapons into machine guns, and other firearms. The danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute. The Magistrate Judge was within his proper discretion in holding Neiss without bond pending his trial and conviction; no prosecutorial misconduct is shown from this.

The prosecution's conduct was justifiable as explained above, and certainly was not, as Neiss argues, "so grossly shocking and outrageous as to violate the universal sense of justice." *Ryan*, 548 F.2d at 789. We affirm the district court's denial of Neiss's prosecutorial misconduct claims.

## VII

### Acceptance of Responsibility

 Neiss argues that because he admitted owning a semiautomatic firearm and admitted that he altered the weapon, the district court should have reduced his sentence by two levels pursuant to U.S.S.G. § 3E1.1, which states in relevant part, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."[27]

Neiss contends that the issue whether the gun in altered form was an illegal machine gun is a question of law that has no bearing on whether Neiss should be rewarded for his decision to admit that he modified the semiautomatic.

Neiss was charged with violating 18 U.S.C. § 922(o), which makes it unlawful "*to transfer or possess a machinegun.*" At trial, Neiss contested the fact that the semiautomatic firearm had been converted into a machine gun. As a result, the government had to prove that Neiss possessed a semiautomatic rifle that was converted into a machine gun in violation of 18 U.S.C. § 922(o). At no time during his trial or sentencing did Neiss take responsibility for the fact that he possessed a machine gun.

Our rule is clear that a defendant is not automatically barred from receiving a reduced sentence for accepting responsibility just because the defendant decides to go to trial. In rare cases a defendant can benefit from accepting responsibility for criminal conduct despite requiring trial. *United States v. Gillam*, 167 F.3d 1273, 1280 (9th Cir.1999) (noting that "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial") (quoting U.S.S.G. § 3E1.1 Application Note 1 (1997)); *United States v. Ing*, 70 F.3d 553, 556 (9th Cir.1995) (holding that pursuing an entrapment defense is not inconsistent with downward adjustment for acceptance

---

27. We review for clear error a district court's decision to deny a sentence reduction for acceptance of responsibility. *See United States v. Fleming*, 215 F.3d 930, 939 (9th Cir.2000).

of responsibility). Here, however, Neiss's challenge to the charge that he possessed a machine gun did not fall within one of these rare circumstances. This is unlike a case where, for example, a defendant asserts an entrapment defense at trial. In such a case, the defendant might admit to conduct that would otherwise be unlawful, and explain the circumstances by which the government allegedly induced it. There, the defendant might still have the possibility of receiving an adjusted sentence for accepting responsibility in the discretion of the trial court. Neiss admitted to altering the weapon but insisted at trial that it was not a machine gun. Yet Neiss's own firearms expert agreed that there was no other reason to bore a hole in the firearm other than to make it a fully automatic machine gun.

As the district court noted at the sentencing hearing:

> Although you're correct when you say that you admitted in the opening statement and throughout that [Neiss] was dealing drugs, you did take the position that this wasn't a machine gun and [Neiss] therefore didn't possess it ... the jury found that [Neiss] didn't possess it in furtherance of a drug-trafficking crime, but they did find that [Neiss] possessed a machine gun. The jury didn't believe that it wasn't a machine gun, and quite frankly, I don't, either. So you contested the fact or those facts which were the basis of a charge, possession of a machine gun, and, therefore, I am not going to give you a two-Level reduction for acceptance of responsibility.

We grant deference to the district court's finding as to whether a defendant ade-

quately accepted responsibility for the crime with which he is charged. *See* U.S.S.G. § 3E1.1, Application Note 5 (2003) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). Here, the district court did not clearly err in refusing to grant the two-point downward adjustment. Neiss's admission of facts but denial of guilt is insufficient to compel a downward adjustment for acceptance of legal responsibility. *United States v. Sotelo,* 109 F.3d 1446, 1449 (9th Cir.1997) (holding that a defendant charged with illegal reentry who contested the sufficiency of the prosecution's proof that he was not a United States citizen was not entitled to a reduction for acceptance of responsibility). The trial court could have reasoned that in this case, placing the burden on the government to prove an element of the offense, i.e., that the gun Neiss possessed was in fact a machine gun, falls short of what § 3E1.1 of the Sentencing Guidelines contemplated for acceptance of responsibility. Giving an incentive to criminal defendants to admit responsibility for crimes may ease the burden on prosecutors who must otherwise prove charges in time-consuming and costly trials. Neiss's acceptance of only part of the facts alleged, while denying guilt, did not serve this goal. It was not sufficient for Neiss to admit he bored the hole in the gun while denying it could function as a machine gun. The government was put to its proof on this issue, and the court decided that the gun met the federal definition of a machine gun.[28] The jury then

---

**28.** Neiss challenges only the district court's decision not to adjust Neiss's sentence downward based on acceptance of responsibility grounds. He does not challenge the court's ruling as a matter of law that the firearm found in Neiss's home was an illegal machine

gun. That the government added a pin to demonstrate the machine gun's capacity as an automatic weapon is not inconsistent with the district court's decision not to grant Neiss a downward adjustment for acceptance of re-

was instructed by jury instructions that are not challenged on this appeal, and determined that Neiss possessed a machine gun. We affirm the district court's decision to decline to grant the two-level adjustment.

## VIII

### Minor Participant

 Daychild contends that he should have received a two-level downward adjustment for his role as a minor participant under U.S.S.G. § 3B1.2, which allows a district court to decrease a defendant's offense level by two "[i]f the defendant was a minor participant in any criminal activity."[29] The district court concluded that "He, Mr. Daychild, was convicted as a participant in this one transaction, and I'm not going to find that he was a minor participant when he was convicted in the same transaction as Mr. Neiss."

We are guided in part by Application Note 5 of the commentary to U.S.S.G. § 3B1.2, which states that a "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal."[30] Daychild did not demonstrate that he is "less culpable than most other partici-

pants," or, as he suggests, that he committed merely a "minor act." He is not less culpable than Neiss in the distribution of drugs that was the ultimate aim of the conspiracy. Nor did he show less culpability than any other participants who were unnamed co-conspirators. To the contrary, Daychild's role in exchanging the backpack full of marijuana for the $2000 in cash consummated a major drug distribution transaction. In this sense, his criminal misconduct was at the essence of the very crime that lay at the heart of the conspiracy.

Daychild not only made this exchange, but had extensive connection to the drugs and tools of the conspiracy. Daychild had been living for almost two weeks in the house that served as an operations base, where authorities found numerous firearms and more marijuana. He scouted the drop site with Neiss, and his fingerprints were on the handgun in the locked safe that contained marijuana shake and a large portion of the cash that Daychild and Neiss received in partial payment for the five pounds of marijuana. Daychild had participated in distributing five pounds of marijuana when the conspiracy was interdicted by effective police work. Police

---

sponsibility. The statute making it unlawful to possess a machine gun, 18 U.S.C. § 922(o), does not require that the machine gun have a pin installed. A machine gun is defined broadly as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Here, by the mere addition of a pin, the gun found at Neiss's home "can be readily restored" to shoot automatically. The statute was specifically designed to reach a case where a converted machine gun is missing a part that can easily be added to make it functional. Thus, the gun satisfied the statutory definition.

**29.** "A district court's finding that a defendant does not qualify for minor or minimal partici-

pant status is heavily dependent on the facts of the particular case, and we uphold such a finding unless it is clearly erroneous .... Section 3B1.2 role adjustments are to be used infrequently." *United States v. Ladum*, 141 F.3d 1328, 1348 (9th Cir.1998) (internal citations omitted).

**30.** "In general, the application notes are binding on the courts in their construction of the Sentencing Guidelines." *United States v. Hernandez–Sandoval*, 211 F.3d 1115, 1117 n. 3 (9th Cir.2000). *See also United States v. Robles–Rodriguez*, 281 F.3d 900, 906 (9th Cir. 2002) ("We are bound by the commentary's definition unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, [the] guideline.") (internal quotation marks omitted).

found and seized about another seven to eight pounds of marijuana in the premises where Daychild resided.[31]

The district court was entitled to decline to view Daychild as "less culpable" within the meaning of U.S.S.G. § 3B1.2 when Daychild was directly involved in a central act of the conspiracy, the exchange of drugs for money, merely because there may have been ancillary aspects of the conspiracy unknown to Daychild.[32] The district court's decision in denying Daychild a minor-role reduction under § 3B1.2(b) was not "clearly erroneous." *Ladum*, 141 F.3d at 1348.

## IX

### *Relevant Conduct*

Daychild appeals the district court's decision to sentence him, in part, based upon the 3208.3 grams of marijuana (more than seven pounds) that the police found in the upstairs bedroom of the house where he and Neiss resided. Though the jury acquitted Daychild of unlawfully possessing with intent to distribute that additional cache of marijuana, the district court nonetheless considered the marijuana discovery "relevant conduct" under U.S.S.G.

§ 1B1.3[33] and increased Daychild's offense level by two, from twelve to fourteen.

The Supreme Court's holding in *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), is controlling. It held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* at 157, 117 S.Ct. 633. At sentencing, the government need only prove the acquitted drug conduct by a preponderance of the evidence, even though the government failed to convince a jury at trial beyond a reasonable doubt.

Accordingly, we must decide whether the district court's findings about the relevant conduct were proven by a preponderance of the evidence, an issue we review for clear error. *United States v. Kahlon* 38 F.3d 467, 470 (9th Cir.1994).

The district court by a preponderance of the evidence determined that the marijuana in the upstairs bedroom was relevant conduct:

I believe that he'd [Daychild] been in the house for, what, a period of weeks. He

31. Further, if law enforcement officials by their surveillance, search, and seizure of contraband had not foiled the conspiracy's efforts, there is little reason to think that Daychild might not have participated in the sale of the additional pounds of pre-packaged marijuana found in Neiss's home.

32. For example, even if Daychild were unaware of the suppliers who provided marijuana to Neiss, Daychild's direct involvement in the illegal sale of marijuana would still permit the district court to view him as other than a "minor participant."

33. U.S.S.G. § 1B1.3(a)(1)(A) and(B) provide:

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense character-

istics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
(1)
(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

had been involved with a transaction of five pounds that he'd taken from the residence just a few days before he was convicted of that. I believe it's reasonably foreseeable that he knew of the 3,208 grams of marijuana, even though the jury didn't convict him of possessing that amount with intent to distribute.

In addition, the district court reviewed Daychild's Presentence Investigation Report, which had concluded that "it is reasonably foreseeable that the defendant [Daychild] was aware of the 3208.3 grams of marijuana" found in the house.

The *Watts* rule squarely applies. The district court was entitled to consider Daychild's acquittal on the possession charge for the marijuana found at Neiss's home, Daychild's proximity to those drugs, and the likelihood he was aware of them. We hold that the district court's decision to include this "relevant conduct" in Daychild's sentence was not clearly erroneous. *See id.*

## X

### *Upward Departure*

Finally, Daychild challenges the district court's decision to depart upward, by moving horizontally, to a higher criminal history category based on its finding that:

> [Daychild] had numerous convictions, dismissed charges. He has a current pending charge.... I think that the likelihood this defendant will commit further crimes is highly probable. Under Guideline 4A1.3, I believe this criminal history category of III significantly

under-represents the seriousness of his criminal history category, and I am going to depart horizontally across the criminal history table to the next criminal history category, which is the criminal history category of IV.[34]

We first address the standard of review for the departure applicable in this case. We then evaluate whether the departure was proper, and whether the sentence must be reversed and remanded because the district court did not give *written* reasons for the departure.

### A

Following the district court's sentencing of Daychild, Congress passed the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650 (2003). Section 401(d)(2) of the PROTECT Act requires us to review de novo a district court's decision to depart from the applicable guideline range in cases where, as here, the district court did not give written reasons for departure, and more generally in any case where the departure does not advance the objectives of sentencing or is not authorized or justified. The subsection, codified at 18 U.S.C § 3742(e), states:

> Upon review of the record, the courts of appeals
>
> shall determine whether the sentence—
>
> . . . .
>
> (3) is outside the applicable guideline range, and
>
> (A) the district court failed to provide the written statement of reasons required by section 3553(c);[35]

---

**34.** To support its decision to depart, the district court further reasoned that "[a]fter being released on his own recognizance, he was revoked. He allegedly committed other crimes. I think a sentence at the high end of the guideline will meet the statutory purpose of sentencing, which is punishment, deterrence, rehabilitation, [and] community protection."

**35.** 18 U.S.C. § 3553(c) states, in relevant part:

> Statement of reasons for imposing a sentence. The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
>
> . . . .

(B) the sentence departs from the applicable guideline range based on a factor that—

(i) does not advance the objectives set forth in section 3553(a)(2); [36] or

(ii) is not authorized under section 3553(b); [37] or

(iii) is not justified by the facts of the case; or

(C) the sentence departs to an unreasonable degree from the applicable guidelines range, having regard for the factors to be considered in imposing a sentence, as set forth in section 3553(a) of this title and the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)[.]

. . . .

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment, except to the extent that the court relies upon statements received in camera in accordance with *Federal Rule of Criminal Procedure 32*.

**36.** 18 U.S.C. § 3553(a)(2) states that when a court fashions an appropriate sentence, among the factors it should consider are

the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

**37.** 18 U.S.C. § 3553(b) states, in pertinent part, that

the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating

The courts of appeal shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, *except with respect to determinations under subsections (3)(A) or (3)(B)*, shall give due deference to the district court's application of the guidelines to the facts. *With respect to determinations under subjection (3)(A) or (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.*

*Id.* (emphasis added).

 We had previously reviewed such departures for an abuse of discretion. *See United States v. Sablan*, 114 F.3d 913, 916–17 (9th Cir.1997) (en banc).[38] In de-

circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**38.** The PROTECT Act applies to upward and downward departures from the applicable Guidelines range, not to adjustments. This explains why we reviewed, *supra*, Neiss's appeals of the district court's refusal to reduce his sentence under the "acceptance of responsibility" (U.S.S.G. § 3E1.1) or "minor role" (U.S.S.G. § 3B1.2) grounds under a clear error standard. The trigger for the PROTECT Act's new de novo standard of review on

ciding whether the PROTECT Act applies to our review of Daychild's sentence, which was imposed before the PROTECT Act's effective date, we are bound by our circuit's law as expressed in the comprehensive and well-reasoned opinion of Judge T.G. Nelson in *United States v. Phillips*, 356 F.3d 1086, 1099 (9th Cir.2004) (holding that "the PROTECT Act's new standard of review applies to cases pending on appeal at the time of its enactment."). *Phillips* joins the unanimous consensus of our sister circuits in holding that retrospective application of the PROTECT Act's altered review standard is permissible. *See United States v. Bell*, 351 F.3d 672, 674–75 (5th Cir.2003) (explaining that the altered standard of review evinces a procedural rather than substantive change); *United States v. Mallon*, 345 F.3d 943, 946 (7th Cir.2003) (holding that the altered standard of review "does not change the statutory penalties for crime, affect the calculation of the Guidelines range, or alter the circumstances under which departures are permitted"); *United States v. Hutman*, 339 F.3d 773, 775 (8th Cir.2003) (same); *United States v. Jones*, 332 F.3d 1294, 1299 & n. 5 (10th Cir.2003) (applying the modified review standard retroactively).

▮▮▮ As we reasoned in *Phillips*, applying the PROTECT Act's new review standard to cases pending at the time of the PROTECT Act's passage does not violate the Ex Post Facto clause, because the altered review standard is a procedural change, not penal legislation. *Phillips*, at 1099. Neither does applying the PROTECT Act in this case violate the Due Process Clause, because Daychild's "potential reliance interest on the former standard of review when making the decision to file an appeal is not substantial enough

to warrant protection by the Due Process Clause." *Id.* Therefore, we apply the modified standard of review required by the PROTECT Act under 18 U.S.C. § 3742(e), and we will review de novo the district court's decision to depart horizontally in Daychild's criminal history category.

**B**

▮▮▮ A court may depart from the applicable guidelines range if it finds "that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(2)(i); *see also United States v. Semsak*, 336 F.3d 1123, 1125 (9th Cir.2003) (applying this guideline). The defendant's criminal history is a permissible ground for departure. U.S.S.G. § 4A1.3 ("If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."); *see also United States v. Connelly*, 156 F.3d 978, 985 (9th Cir.1998) ("Departure is also justified purely on the basis of Defendant's likelihood of recidivism.").

▮▮▮ Daychild's criminal history is extensive and included five convictions since 1990. He had been arrested eighteen times and was awaiting trial on felony burglary and aggravated assault charges at the time his sentence was imposed. Daychild admitted to the pretrial services officer that he had for years sold drugs to make money. Yet Daychild's only convic-

appeal is activated when a district court departs up or down. By contrast, 18 U.S.C. § 3742(e)(2) governs the incorrect application

of the Sentencing Guidelines, and the PROTECT Act did not alter the standard of review applicable to that section.

tion for selling and distributing drugs involved the drug sale to the government informant, on review in this appeal. "The Guidelines specifically provide that an upward departure may be based on past criminal activity that did not result in a conviction." *United States v. Ponce,* 51 F.3d 820, 828 (9th Cir.1995) (citing U.S.S.G. § 4A1.3(e)). Thus, Daychild's admission in itself would justify an upward departure. We think the court was correct that the likelihood that Daychild would commit other crimes is probable, and that the criminal history category of III did not adequately take into account Daychild's history of wrongdoing. Assessing this issue de novo, we hold that the district court could properly depart upward by moving horizontally one criminal history category.[39]

## C

■ Daychild asserts a separate claim that the district court erred procedurally because it did not adhere to a novel requirement in the PROTECT Act mandating that a district court's "reasons [for departing] must ... be stated with specificity in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2). The PROTECT Act's new writing require-

ment, like the altered standard of review for departure decisions under 18 U.S.C. 3742(e), is a procedural change to increase the efficacy of district court sentencing and appellate review. The writing requirement is not penal legislation, nor is it detrimental to any reliance interest of a criminal defendant. For reasons the same as those addressed *supra* and in *Phillips,* applying the writing requirement to appeals pending when the PROTECT Act was passed is not impermissible.[40]

■ The district court in this case did not give reasons in its written order of judgment and commitment for its decision to depart horizontally from Daychild's criminal history category of III to a category of IV. The lack of written reasons for departure [41] is of no significance to Daychild's sentence. We leave the sentence undisturbed because of our analysis of 18 U.S.C. § 3742(f), which states:

Decision and disposition. If the court of appeals determines that—

(1) the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instruc-

---

39. Because the district court departed horizontally by only one criminal history category, upon our conclusion that the upward departure in the criminal history category was permissible, this case presents no issue on whether the extent of an otherwise permissible departure was excessive. That issue would be reviewed for abuse of discretion. *United States v. Alfaro,* 336 F.3d 876, 880–81 (9th Cir.2003) (explaining that the PROTECT Act did not alter this standard of review).

40. We do not address whether any other provisions of the PROTECT Act, beyond those we have specifically reviewed, apply retroactively. Thus, we do not decide whether 18 U.S.C. § 3742(g), governing resentencing, an issue not ripe in this case at this time, may be impermissibly retroactive in any particular

case. Nor do we decide whether any of the various provisions restricting a district court's ability to depart downward under Chapter Five of the Guidelines, which are not at issue here, might be impermissibly retroactive as applied in any case.

41. The district court did explain its reasons on the record in open court, and they may be reviewed in the transcript. Thus, the district court satisfied 18 U.S.C. § 3553(c), mandating that reasons for imposing a particular sentence must be "state[d] in open court." However, the district court did not satisfy § 3553(c)(2)'s new requirement that if the sentence is a departure, the "reasons must also be stated with specificity in the written order of judgment and commitment."

tions as the court considers appropriate;

(2) *the sentence is outside the applicable guideline range and the district court failed to provide the required statement of reasons in the order of judgment and commitment,* or the departure is based on an impermissible factor, or is to an unreasonable degree, or the sentence was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions and—

(A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g);

(B) if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g);

(3) *the sentence is not described in paragraph (1) or (2), it shall affirm the sentence.*

*Id.* (emphasis added). We have already concluded upon de novo review that the district court was justified in departing one criminal history category given Daychild's potential for recidivism. We have also concluded that no issue could be raised about the extent of the district court's departure, as it was the minimal permitted increase in category. Accordingly, we have not determined that the sentence is "too high." *Id.* To the contrary, the record is clear as to why the departure was appropriate in Daychild's case. Because we have not determined that the sentence is "too high" pursuant to

18 U.S.C. § 3742(f)(2)(A), nor that it was "too low" pursuant to § 3742(f)(2)(B), this case falls precisely under 18 U.S.C. § 3742(f)(3), which requires that, if "the sentence is not described in paragraph (1) or (2)," then we "shall affirm the sentence." *Accord United States v. Orchard,* 332 F.3d 1133, 1141 n. 7 (8th Cir.2003) (holding that where the district court did not, in accordance with 18 U.S.C. § 3553(c)(2), provide written statements of reasons for its departure, "a remand is not required if the reviewing court determines that the departure was not impermissible") (citing 18 U.S.C. § 3742(f)(3)).

## D

We affirm, de novo, the district court's decision to depart horizontally by one criminal history category given Daychild's numerous arrests and convictions, and his potential for recidivism. We affirm the sentence despite that the district court, while explaining reasons in open court, did not state reasons for departing in the written judgment and commitment, because we have determined that the length of the sentence was not excessive.

**AFFIRMED.**